The Kantrow Law Group, PLLC
Attorneys for Shafquat Chaudhary
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
516 703 3672
fkantrow@thekantrowlawgroup.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| ELITE LIMOUSINE PLUS, INC., *et al.,* | Case No.: 23-43088-jmm |
| Debtors. | Jointly Administered |

------------------------------------------------------------X

**OBJECTION TO THE MOTION OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS
SEEKING THE ENTRY OF AN ORDER PURSUANT TO RULE 2004
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

TO: HON. JIL MAZER-MARINO
UNITED STATES BANKRUPTCY JUDGE

Shafquat Chaudhary ("Chaudhary"), by and through his attorneys, The Kantrow Law Group, PLLC, respectfully submits this as and for his objection (the "Objection") to the motion (the "Motion") filed by the Official Committee of Unsecured Creditors (the "Committee") seeking the entry of an Order authorizing the Committee to conduct an examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and states as follows:

1. On August 29, 2023, (the "Petition Date") Elite Limousine Plus, Inc., (the "Debtor"), filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code. The Debtor continues to operate its business as a debtor-in-possession.

2. On January 30, 2024, the Committee was appointed in this case.

3. As set forth in the Committee's moving papers, the Debtor's principal, and the purported witness at whom the latest Motion is aimed, appeared for an oral deposition, in his capacity as the Debtor's principal. According to the transcript of the deposition, which was attached to the Committee's Motion, the deposition started at 10:05 a.m. on March 13, 2024, and

concluded at 5:26 p.m.  The Committee inquired of Chaudhary regarding the many business entities in which he has an interest.

4. After the conclusion of the March 13, 2024, deposition, the Committee commenced its discussions with Chaudhary to obtain documents regarding each and every entity in which he held or holds an interest, as well as his personal finances.  In an attempt to avoid "formal" discovery, Chaudhary agreed to produce documents once the Committee set forth what it was it was looking for.  The list of documents it sought mirrors exactly those documents set forth in its Motion. In other words, the Committee's incredibly over broad list of documents is designed to burden and harass Chaudhary in the hopes that he will simply roll over.  The use of the Rule 2004 examination as a tool of discovery, in this case, is not used to discover, but to harass and coerce Chaudhary.

5. After reviewing the list, prior to refusing to produce documents under the parameters demanded by the Committee, unable to reach a consensual resolution, the Committee opted instead to seek an Order of this Court pursuant to Rule 2004.  While the Committee is well within its rights to seek such an order, it is not entitled to abuse the process and for those reasons, Chaudhary sets forth his objection to the Motion herein.

6. It is noteworthy that the Committee has not sought, nor has it conducted, a review of the Debtor's books and records to determine whether the Debtor engaged in any transfers to any entity controlled by Chaudhary, or to Chaudhary in his personal capacity, but rather, broadly concludes that because Chaudhary controls the Debtor and other entities there can only be one conclusion – he must have misappropriated the Debtor's property and must demonstrate to the Committee that he did not engage in avoidable transfers.  In other words, the Committee wants to examine each and every one of the Debtor's principal's non-debtor entities; their respective bank

statements; their respective books and records; their respective tax returns; their respective transactions; all in the hopes that the Committee will find transfers of funds that originated from the Debtor during the avoidance period. In other words, the Committee's plan is to make the non-debtor entities demonstrate that they did not receive potentially avoidable fraudulent conveyances. This is an inappropriate investigation and an attempt to harass non-debtor entities and to place them under a microscope because the Committee concluded that there must have been wrongdoing on the part of the Debtor. Again, nothing has prevented the Committee from seeking to obtain the Debtor's financial records and inquire as to whether it engaged in transfers – but that has not taken place.

## THE COMMITTEE'S MOTION

7. The Committee's Motion is replete with conclusions that based solely on theories that Chaudhary must have engaged in bad acts. The Committee relies upon Chaudhary's testimony in the exhaustive oral deposition it conducted of Chaudhary in his capacity as an officer of the Debtors. Paragraph 22 of the Committee's Motion is a demonstrative of such a conclusion, and the Committee asks this Court to allow it to conduct the intrusive investigation it seeks to embark upon based upon these incredible leaps. Here, by way of example, the Committee states "Chaudhary acknowledged the existence of a family trust, which *upon information and belief*, Chaudhary controls directly or indirectly, and, which has transacted with the Debtors. The Committee *needs to explore if* any of the Debtors' funds or other assets were transferred to the trust, and if so, whether the transfers were appropriate or avoidable." (Emphasis Added").

8. As set forth in the Objection and the argument below, the Committee starts with a presumption that the Debtors must have transferred assets to Chaudhary or his entities. Yet, the Committee has not taken a single step other than conducting the oral examination of the Debtors in order to determine *if* in fact assets were transferred away from the Debtors. In other words, the

inquiry must commence at the Debtors' level, nor the alleged recipients' level. Until and unless the Committee can identify a single transfer out of the Debtors, conducting such an intrusive deep dive into third parties is simply put, in appropriate.

9. Turning to the Committee's proposed Order, it would appear that the Committee would like to completely ignore the Federal Rules of Civil Procedure as well as the Bankruptcy Rules. It proposes that the proposed Order serve as the subpoena and any protections that would be available in a subpoena be waived. The Committee ignores the fact that the case is pending in the Eastern District of New York and provides a decretal paragraph in its proposed Order that Chaudhary be compelled to attend an oral deposition as the Committee's counsel's office located in New York City. Should the Court grant any relief to the Committee, this paragraph must be stricken from the Order and the Committee's examination must take place within the district in which the bankruptcy case is pending and not in New York City which sits outside of the District.

10. Moreover, the Committee proposes that it need only serve a copy of the Court's Order by email, hand or overnight mail solely upon Chaudhary's counsel, which is also inappropriate. Likewise, since Chaudhary is a non-party to the matter, an appearance fee is required, and the proposed Order makes no mention of that required fee. This is too is inappropriate.

**THE DOCUMENT DEMAND**

11. The Committee's document demand, which spans an impressive nine (9) pages, indicates just how intrusive the proposed inquisition is. While the Committee defines "Debtors" at paragraph 6 of the definitions section of the document demand as being "Elite and DSS" and the Committee refers throughout its Motion to the Debtors and its duty to recover assets for the Debtors' estates, a review of the Court's docket indicates that the Committee was appointed solely in the Elite case and not in the DSS case (although they are jointly administered they are not

substantively consolidated). Docket No. 115 has the Notice of Appointment and the appointment refers solely to Elite. Accordingly, the Committee's request for documents as they may relate to DSS is without merit and must be stricken.

12. Paragraph 12 of the definition section defines the Committee's "entity or entities" it wishes to examine, all without obtaining a Rule 2004 examination of any of the entities. Rather, it attempts to "backdoor" its way into these entities by using Chaudhary to get information other non-parties. The list of entities contains not less than twenty-four (24) different entities and in actuality is even more than that. The Committee uses a catchall of "Soundview Entities" and states each of these entities. In short, the Committee will have Chaudhary spending countless hours assembling documents and spending more than significant funds to deal with this inquisition all based upon the theory that Chaudhary must have transferred funds from Elite to these entities during the avoidance period – but again, the Committee has pointed to a single avoidable transfer.

13. In addition, the Committee seeks to review documents for a period of six (6) years prior to the Petition Date. This period is excessive.

14. Turning to the actual document requests, the Court should note the overly broad, incredibly intrusive and harassing nature of the requests. The Committee seeks: (i) a list of all of Chaudhary's entities in which he has "control" and supporting documents concerning the current status of the entities; (ii) a list of all current and former officers; directors and members of each entity; (iii) a list of all assets each entity holds; (iv) a list of all financial accounts Chaudhary controls or has controlled, including bank accounts, investment accounts, credit card accounts, employee pension accounts, or trust accounts; (v) a list of financial accounts any entity controls or has controlled; (vi) a list of intellectual property held; (vii) a copy of deeds or leases for any real property assets Chaudhary owns or owned, appraisals, broker opinions of value; (viii) a copy of

the deed or lease for any real property assets currently or formerly owned by any entity; (ix) any information relating to any mortgage, guaranty, or other lien, claim or encumbrance regarding the real property.

15. The Committee seeks information regarding transfers for <u>any</u> amount in excess of $10,000, including checks, wire transfers, deposits, from Chaudhary to or for the benefit of any entity of from entity to or for the benefit of Chaudhary as well as any information regarding the transfer. The request for this information is so overwhelmingly intrusive that Chaudhary does not even know how he could address this demand. In short, the Committee would have Chaudhary review each and every bank account, credit account, and the like, over a period of six (6) years, identifying any transfer in excess of $10,000; produce documents regarding the transfer and explain the transfer – that is just ridiculous and serves absolutely no purpose other than to harass him. It would take days if not weeks of someone reviewing hundreds of transactions combing for this information, and to what end? This is a clear example of the Committee's desire not to discover information to help it to understand the Debtors' finances, but to force Chaudhary to roll over.

16. Regarding the trust, the Committee again starts with the presumption that if Chaudhary created a trust, he must have used estate assets to fund the corpus of the trust. The Committee has not identified a single transfer that originated from Elite, but it would like to take the microscope to the trust in the hopes that it will find evidence of malfeasance on the part of Elite. This broad discovery is an abuse and while Rule 2004 offers broad discovery to the movant, this discovery far exceeds the scope of such an examination.

17. The Committee then goes on to a section it defines as "use of assets" in which it seeks to examine documents regarding each and every entity in which Chaudhary holds or held an

interest. The Committee's demand for these documents is without merit. It is difficult to understand why the Committee should be entitled to review such documents.

18. The Committee seeks to obtain documents regarding obligations, including but not limited to the personal obligations of Chaudhary to Rosenthal & Rosenthal ("R&R") the Debtors' pre-petition secured creditor. If the Committee believes that there were transactions with R&R that could be avoided for the benefit of the creditors of the Elite estate, it should direct a Rule 2004 examination of R&R.

19. Finally, the Committee concludes with a demand for information regarding eleven (11) different individuals and any "involvement" by and between any of Chaudhary's entities and the individuals. Setting aside the ridiculous nature of the request or why it is relevant to the financial obligations of the Debtors, Chaudhary is at a loss of how to even respond to such nonsense. This request is just another demonstration of how far afield the Committee's request seeks to travel.

## ARGUMENT

20. There can be no doubt that Rule 2004 is a useful and powerful investigatory tool used often by creditors, committees and trustees alike, to investigate the Debtor. Moreover, Chaudhary admits that Rule 2004 discovery is broad and often referred to as "fishing expedition." However, the ability to conduct such a fishing expedition is not unlimited. While the Rule 2004 examination may be an examination of any person or entity who may have knowledge pertinent to discovery of assets and may be used to examine transactions, as well as to determine if wrongdoing occurred, (*See, e.g., In re Enron Corp.,* 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) there are circumstances where the use of the rule should be limited. In *Enron,* the Court held "the availability of Rule 2004 as a discovery tool is not unlimited." *Id.* Limitations have been imposed where the purpose of the examination is to abuse or harass.

21.     Reviewing the incredibly broad "deep dive" that the Committee seeks to engage in, clearly indicates that the costs associated with such discovery shall be incredibly high and the burden on Chaudhary incredibly significant. This was no "accident" on the part of the Committee. The Committee's overly broad, burdensome and harassing inquisition it intends to embark on, is designed with an eye of forcing Chaudhary to make a decision – spend the money to defend such an attack or try to make a deal with the Committee. What that deal entails is unknown but one could imagine that Chaudary will be backed into a corner under the circumstances.

22.     The Southern District was faced with a review of costly discovery in *In re SunEdison, Inc.,* 572 B.R. 482 (Bankr. S.D.N.Y. 2017). In that case, the Bankruptcy Court engaged in an analysis of the discovery allowed under Rule 2004. There a creditor sought to obtain "all documents and communications" generally related to the transfer of assets; the debtor's chapter 11 cases and certain recoveries in other matters. The debtor eventually objected to the discovery arguing that the discovery was premature, overly broad and speculative and unduly burdensome.

23.     The Bankruptcy Court began by outlining the law under Rule 2004 noting that generally a party seeking such an order must demonstrate "good cause" for the examination. "Good cause" in turn, is typically demonstrated by showing that the "proposed examination is necessary to establish the claim of the party seeking the examination, or… denial of such request would cause the examiner undue hardship or injustice." *Id*. at 491. The Bankruptcy Court went on to state that the Rule 2004 examination requires a balance between the needs of the movant and the burden imposed on the party from whom the discovery is sought.

24.     The Court must "balance the competing interest of the parties, weighing the relevance of and necessity of the information sought by the examination." *In re Drexel Burnham Lambert Grp., Inc.,* 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); *accord In re Coffee Cupboard,*

*Inc.,* 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991). In addition, as the Bankruptcy Court reasoned in *In re SunEdison, Inc.,* 562 at 250, "[T]he spirit of proportionality is consistent with the historic concerns regarding the burden on the producing party and is relevant to the determination of cause." *Id.* If left unchecked, the Committee's Rule 2004 fishing expedition would impose astronomical discovery costs on Chaudhary.

25. *If* the Committee identified transfers that originated from the Debtor, and such transfers allegedly originated during the avoidance period, Chaudhary would be obliged to provide the documents identified by the Committee so that the Committee could determine whether the estate had a potential cause of action to recover such alleged or putative fraudulent conveyance. However, as stated herein, the Committee makes no mention of *any* specific transfers or alleged bad acts. Instead, the Committee cavalierly avers that while it is entitled to a fishing expedition, the Committee's Rule 2004 is not a fishing expedition. It relies on the bullet points found at pages 4 and 5 of its moving papers to support its position. It states that Chaudhary acknowledged that tens of millions of the Debtors' (there are two debtors jointly administered although the Committee only has been appointed in the lead case) funds were transferred to related entities and were not repaid and at least some of these affiliate entities have assets and are profitable; Chaudhary stated that $4 million in funds belonging to the drivers and held by Debtor Elite in a long-term savings plan for the drivers, was used by Chaudhary for affiliate businesses based on Chaudhary's unsupported allegations that the drivers agree to loan the money; Chaudhary stated without providing any evidence, that $3 million of the loan was repaid; Chaudhary acknowledged that the Debtors used and paid rent for officed owned by an entity owned or controlled by Chaudhary; Chaudhary acknowledged that various entities utilized the Debtors [sic] employees; Chaudhary's Debtor Elite email address and personal cell phone number was [sic] used to conduct business for

multiple non-debtor entities and multiple non-debtor entities used the Debtors' office without compensating the Debtors; and the testimony from the March Deposition raised many questions about other entities which Chaudhary owns or controls, several of which appear to have assets, including (but not limited to) multiple companies or trusts.

26. Boiling the Committee's fishing expedition down to its essence, it is the last bullet point that the Committee seeks to explore in its overly broad, intrusive, microscopic deep dive inquisition it seeks to unleash against Chaudhary. While the Committee has painted with a broad brush, allegations to support its unprecedented inquiry, it has had more than sufficient time to conduct at least a cursory investigation into the Debtor's books and records to support its broad-based allegations that tens of millions of dollars were transferred to related entities. If it was so concerned about these tens of millions of dollars that allegedly originated at the Debtor, how is it possible that the Committee has not sought documents in connection therewith. Now it comes to the Court and argues to this Court that the appropriate inquiry is not at the Debtor level, but rather should be aimed at Chaudhary and his entities. That simply makes no sense. Assuming *arguendo*, that transfers were originated by the Debtor, and that they were originated during the avoidance period, and the Debtor was insolvent or rendered insolvent, and there existed creditors that could avoid the transfer, one would have expected that the first inquiry by the Committee would have been directed at the Debtor, yet, the Committee did nothing after the March 13, 2024, deposition in connection with investigating these alleged transfers. Rather, it sat on its rights and now seeks to burden Chaudhary, in his individual capacity, to produce the documents not on behalf of the Debtor, but on behalf of his entities. This is a blatant misuse of Rule 2004.

27. The Committee's thinly veiled motives are found in the final bullet point, as set forth herein. "Chaudhary owns or controls" other entities, "several of which appear to have assets"

and that is what the Committee wants to dig at. The Committee wants to make sufficient misery to force Chaudhary to a bargaining table so that it may make him an offer to buy his way out of the Committee's inquisition. If not that, then the Committee wants to determine *if* an action is commenced against him in his personal capacity or against any of his entities, would a judgment, if ultimately secured, have any value. In short, that would be what is often referred to as supplementary procedures *after* a creditor obtains judgment. Once again, an impermissible use of Rule 2004.

28. Chaudhary respects and understands that the Committee has obligations and is entitled to conduct an investigation, reasonable under the circumstances, in an effort to assist the Debtor as a fiduciary, to recover assets for the benefit of the creditors of the estate. However, that does not empower the Committee to use Rule 2004 as a tool to harass and burden Chaudhary and his non-debtor entities so that the Committee may "gain a leg up" in "negotiations" to have Chaudhary put up a pot of money to stop the harassment. This Court has the power to restrain the intrusive discovery sought by the Committee as being overly broad, unduly burdensome, designed to harass and run up costs. For these reasons, Chaudhary respectfully asks this Court to deny the Committee's Motion in its entirety or to otherwise restrict the discovery to the appropriate inquiry.

WHEREFORE, Shafquat Chaudhary respectfully requests that this Honorable Court deny the Committee's Motion in its entirety.

Dated: Smithtown, New York
        August 9, 2024

                              The Kantrow Law Group, PLLC
                              Attorneys for Shafquat Chaudhary

BY:   S/Fred S. Kantrow
        Fred S. Kantrow
        732 Smithtown Bypass, Suite 101
        Smithtown, New York 11787

516 703 3672
fkantrow@thekantrowlawgroup.com