**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
In re:                                                    Chapter 11

    Elite Limousine Plus, Inc.,                        Case No. 23-43088-jmm
                -and-
    Dispatch Support Services LLC                      Case No. 23-43089-jmm

    Debtors.                                           (Jointly Administered)
---------------------------------------------------------x

**MOTION OF UNITED STATES TRUSTEE TO APPOINT A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, TO CONVERT CHAPTER 11 CASES TO CHAPTER 7**

        William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby moves (this "Motion") for entry of an order, pursuant to sections 1112(b), 1104(a), and 105(a) of title 11 of the United States Code (11 U.S.C. §§ 101–1532, as amended, the "Bankruptcy Code"), appointing a chapter 11 trustee for the above-captioned jointly administered chapter 11 cases (the "Bankruptcy Cases") of Elite Limousine Plus, Inc. ("Elite") and Dispatch Support Services LLC ("Dispatch," and together with Elite, the "Debtors"), or, in the alternative, pursuant to sections 1112(b) and 105(a) of the Bankruptcy Code, converting the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code. In support of the Motion, the United States Trustee respectfully represents as follows:

**PRELIMINARY STATEMENT**

        After nearly two and a half years in chapter 11, and notwithstanding the extensive efforts of counsel for the Debtors, the Official Committee of Unsecured Creditors (the "Committee") and other stakeholders, these Bankruptcy Cases have not resulted in a viable path toward reorganization.

        The Debtors, together with non-debtor affiliate Royal Dispatch Services, Inc. ("Royal Dispatch"), operate "Black Car Base" companies that are licensed by New York City to dispatch

Black Car vehicles to passengers on a pre-arranged basis and collect payment from the passengers after a ride.[1]

In 2017, Elite acquired the customer lists of another Black Car Base in exchange for assuming approximately $11 million in debt owed by that other company to lender Rosenthal & Rosenthal ("Rosenthal"). Following the acquisition, Rosenthal began providing receivables-based financing to the Debtors. As of the petition date, Rosenthal's secured claims against the Debtors exceeded $15 million.

Throughout the first year of these Bankruptcy Cases, Rosenthal continued to finance the Debtors. In September 2024, the Court entered an interim order that authorized the Debtors to obtain post-petition financing from a new lender who replaced Rosenthal as the DIP lender (the "Replacement DIP").

In April 2025, the Court entered a final order approving the Replacement DIP that also incorporated a settlement under which Rosenthal assigned its prepetition secured claims to the Committee in exchange for releases by the Debtors and guaranteed percentages of certain litigation recoveries and any recoveries by unsecured creditors (the "Secured Creditor Settlement").

The Replacement DIP and Secured Creditor Settlement were intended to position the Debtors for profitability and to pave the way for a reorganization. Ten months later, however, Elite is operating at a substantial loss, the Debtors have incurred more than $1 million in professional fees, and no plan of reorganization has been filed.

Proposing a confirmable plan for the Debtors would likely require that their owner, Shafquat Chaudhary ("Mr. Chaudhary") (i) make a substantial "new value" contribution to retain

---

[1] The Black Car vehicles are owned by their drivers, who have a contractual franchisee/franchisor relationship with the Debtors and/or Royal Dispatch Services.

ownership of the Debtors' businesses and a substantial settlement payment on account of the Avoidance Actions, or (ii) agree to sell the Debtors' businesses. These cases have been pending for nearly two and a half years; however, no reorganization proposals have been filed by the Debtors, nor have they moved to market and sell their assets. It is unclear whether Mr. Chaudhary has the financial capacity to fund a confirmable reorganization for the Debtors. In any event, the scenario is conflicted: Mr. Chaudhary currently sits on both sides of any reorganization negotiations.

In addition to failing to file a plan or sale motion, the Debtors have failed to pursue potential avoidance actions against Mr. Chaudhary and his non-debtor businesses. Mr. Chaudhary manages and controls the Debtors and oversees these Bankruptcy Cases. From the outset, the avoidance actions represented the primary source of potential recovery for unsecured creditors. The Debtors' failure to pursue these claims reflects a disabling conflict of interest that has stymied meaningful progress in these cases. At this point, the Debtors' post-petition secured claims likely exceed the value of the Debtors' businesses and assets, and professional fees have grown to a level that may exceed the value of avoidance actions—the sole unencumbered assets of these estates.

Chapter 11 is intended to provide debtors with a meaningful opportunity to rehabilitate their businesses and preserve value for creditors. It is not designed to allow debtors to remain in bankruptcy while operations continue to generate losses, administrative expenses accrue unchecked, potential recoveries evaporate, and no realistic prospect of reorganization exists. Under well-settled precedent, the circumstances of these Bankruptcy Cases constitute cause for the appointment of a chapter 11 trustee or, alternatively, conversion to chapter 7 to ensure that estate assets and causes of action are properly administered.

## FACTUAL BACKGROUND[2]

1. The Debtors commenced these chapter 11 cases on August 29, 2023 (the "Petition Date"). *See* ECF no. 1.

2. Since the Petition Date, the Debtors have operated as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On January 30, 2024, the United States Trustee appointed an Official Committee of Unsecured Creditors. *See* ECF no. 115.

4. On April 22, 2025, the Court entered a final order approving the Replacement DIP (the "Final DIP Order"). *See* ECF no. 276. Among other things, the Final DIP Order incorporated a settlement pursuant to which Rosenthal assigned its prepetition secured claims against the Debtors, as well as guaranty and other claims against Mr. Chaudhary and his non-debtor businesses, to the Committee in exchange for (i) a release of the estates' potential claims against Rosenthal and (ii) an agreement that Rosenthal would receive 40% of any recoveries on the claims and causes of action it assigned and 20% of any distributions to unsecured creditors.

5. Elite's monthly operating reports reflect that it has continued to operate with substantial losses even after the Replacement DIP. As of the end of November 2025, Elite's cumulative losses totaled $456,850. *See* ECF no. 309.

6. As of the date hereof, the Debtors have not proposed a confirmable plan of reorganization and have not demonstrated a feasible path to profitability or rehabilitation.

---

[2] The United States Trustee respectfully requests that, in considering the Motion, the Court take judicial notice of the docket of the Bankruptcy Cases, the petitions and any schedules, statements of financial affairs, monthly operating reports, and other financial disclosures filed or made by the Debtors in the Bankruptcy Cases (and/or the absence thereof), all pleadings filed in the Bankruptcy Cases, including exhibits thereto, and the record of all hearings and meetings conducted in connection with the Bankruptcy Cases.

7. The Debtors are owned and controlled by Mr. Chaudhary, who also owns or controls various affiliated non-debtor entities.

8. Based on information available to the United States Trustee, the Debtors may hold potential avoidance actions and other estate causes of action against Mr. Chaudhary and affiliated non-debtor businesses.

9. These potential claims appear to represent the primary, if not sole, source of meaningful recoveries for unsecured creditors.

10. Despite this, the Debtors have failed to commence any avoidance actions.

## LEGAL STANDARDS AND ARGUMENT

**A.   Cause Exists Under Section 1112(b)(4)(A) Due to Substantial and Continuing Losses and the Absence of a Reasonable Likelihood of Rehabilitation**

Section 1112(b)(1) of the Bankruptcy Code provides that the Court shall convert or dismiss a chapter 11 case "for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." *See* 11 U.S.C. § 1112(b)(1). "Cause" for conversion, dismissal or appointment of a chapter 11 trustee expressly includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

One purpose of section 1112(b) is to prevent the unwarranted depletion of estate assets in cases with no realistic chance of successful reorganization. *See Lynch v. Banard*, 590 B.R. 30, 36 (E.D.N.Y. 2018). Courts consistently hold that ongoing operating losses and administrative insolvency constitute cause. *See, e.g.*, *In re BH S&B Holdings*, LLC, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010); *In re Babayoff*, 445 B.R. 64, 72–73 (Bankr. E.D.N.Y. 2011). Courts consider, among other factors, ongoing operating losses, administrative insolvency, and the absence of a

feasible reorganization. See, e.g., *In re FRGR Managing Member LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009).

Each factor is present here. The Debtors have incurred sustained operating losses, accrued significant professional fees, and failed to propose a confirmable plan or demonstrate any realistic prospect of rehabilitation. These circumstances independently and collectively constitute cause under section 1112(b)(4)(A).

**B.     Alternatively, Cause Exists to Appoint a Chapter 11 Trustee Under Section 1104(a)(1)**

Section 1104(a)(1) mandates appointment of a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement." Courts frequently appoint trustees where insider conflicts prevent fulfillment of fiduciary duties. *See, e.g.*, *In re Euro-American Lodging Corp.*, 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007). Gross mismanagement includes conflicts of interest, failure to protect estate assets, and refusal to pursue valuable claims. *See, e.g.*, *In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 520 (Bankr. E.D.N.Y. 1989).

Appointment of a trustee is appropriate where insiders are adverse to the estate, administrative expenses threaten to exhaust unencumbered assets, and only an independent fiduciary can objectively evaluate and pursue estate claims. See, e.g., *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (noting that "When a debtor-in-possession is incapable of performing [fiduciary] duties, a Chapter 11 trustee may be appointed."); In re Marvel Entm't Grp., Inc., 140 F.3d 463, 470 (3d Cir. 1998).

Here, the Debtors—under the control of Mr. Chaudhary—have failed to pursue avoidance claims against Mr. Chaudhary and his affiliated non-debtor companies, despite the central importance of those claims to creditor recoveries. Courts routinely hold that such failures, particularly where the debtor is controlled by the litigation target, constitute gross mismanagement.

### C. Cause Is Established Under the Totality of the Circumstances

Considering the totality of the circumstances—including persistent operating losses, administrative insolvency, failure to propose a feasible plan, and failure to pursue claims against an insider—cause exists under sections 1112(b) and 1104(a). *See Babayoff*, 445 B.R. at 72.

### D. Appointment of a Chapter 11 Trustee Is in the Best Interests of Creditors and the Estate, With Conversion Warranted in the Alternative

Section 1112(b)(1) of the Bankruptcy Code expressly authorizes appointment of a trustee where a court finds "cause" to covert or dismiss a chapter 11 case but also determines that the best interests of creditors and the estate are better served by keeping the case in chapter 11 but appointing a trustee to replace the debtor in possession. *See* 11 U.S.C. § 1112(b)(1). In addition, under section 1104(a)(2) of the Bankruptcy Code, even in the absence of a finding of cause, a court is required to appoint a trustee "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate." *See* 11 U.S.C. § 1104(a)(2). Courts have found that the appointment of a trustee is in the best interests of creditors and the estate where there is potential value for creditors but insider conflicts prevent responsible administration. *See, e.g., In re Cardinal Industries Inc.*, 109 Bankr. 755 (Bankr. S.D. Ohio 1990).

The United States Trustee submits that, here, appointment of a chapter 11 trustee, rather than immediate conversion, is in the best interests of creditors and the estate. A neutral third-party fiduciary is needed to assess the going-concern value of the Debtor's business (if any) and the value of the Avoidance Actions, determine whether reorganization or liquidation will maximize recoveries, negotiate with Mr. Chaudhary at arm's length, and oversee a liquidation if necessary.

If, however, the Court determines that a viable path to reorganization likely no longer exists and continued chapter 11 administration would further diminish estate value, conversion to

7

chapter 7 would be appropriate. Accordingly, appointment of a chapter 11 trustee is the preferable remedy if a reorganization is potentially viable, with conversion warranted in the alternative.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the United States Trustee respectfully requests that the Court enter an order: (a) appointing a chapter 11 trustee for these Bankruptcy Cases or, in the alternative, converting the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code; and (b) granting such other and further relief as the Court deems just and proper.

Dated: New York, NY
January 23, 2026

By: */s/ Jeremy Sussman*
Jeremy Sussman
U.S. Department of Justice
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 510
New York, NY 10004-1408